## East Huntingdon Township v. Borough of Scottdale

*Milton V. Munk Jr.*, for petitioner.
*Robert P. Boyer*, for defendant.

KEIM, J., April 7, 1967.—This case comes before the court on application of East Huntingdon Township to connect with the sewer system of Scottdale Borough, and is governed by section 1530 of The Second Class Township Code of May 1, 1933, P. L. 103, 53 PS §66530, as amended, which provides as follows:

"Any township may, by agreement, connect with an existing sewer owned by any adjacent municipality, for sewage purposes.

"Whenever any township desires to connect with the existing sewer of any adjacent municipality and no agreement has been reached between such township and the adjacent municipality, a petition shall be presented by the board of supervisors to the court of quarter sessions setting forth the facts. The court shall fix a day for hearing upon such petition and shall direct such public notice to all parties interested therein as to it shall seem desirable. If, after hearing, the court shall be of the opinion that such connection can be made without impairing the usefulness of the existing sewer, it shall appoint three viewers who shall view the premises, and investigate the facts of the case and shall assess the necessary costs and expenses of making the connection, and the proportionate part of the expense of building the original sewer upon such township, and shall fix the proportion of the expense for repairs which the municipality and the township shall thereafter bear, and determine all other questions liable to arise in connection therewith".

The petition presented to the court on behalf of East Huntingdon Township prayed for a hearing in order for the court to determine whether a connection into the Scottdale Borough sewer system is proper and, if so, what terms should be incorporated in an agreement between petitioner and the borough. Pursuant to an order, a hearing was held before the court on August 2, 1966, to determine whether the utility of the exist-

ing sewer system within Scottdale Borough would be impaired by the connecting of additional users from the Township of East Huntingdon.

Testimony introduced at the hearing disclosed that there had been a request by petitioner to allow it to connect into the sanitary sewer system of Scottdale, along a portion of the township known as West Pittsburgh Street, which adjoins the borough. Approximately 45 homes could be served by the proposed sewer line.

Petitioner showed that it would be willing to pay a fair and reasonable price for the use of the borough sewer lines and pay the cost of construction of said connections and be responsible for its proportionate share of the maintenance. The borough has refused the request and objects to the relief requested by petitioner.

At the inception of the proposed authority in 1961, petitioner was invited to discuss the feasibility of constructing a sewer system plant to handle the sewerage flow from a number of municipalities in the immediate area. Petitioner, along with other municipalities, refused to join in the common purpose, and was advised at that time that the Boroughs of Scottdale and Everson would themselves undertake the project. This was done, and the Westmoreland-Fayette Municipal Sewer Authority came into existence for the purpose of raising the necessary funds for the construction of the sewer treatment plant and system. It is into this system petitioner desires to connect.

This court must determine first, before the appointment of viewers, whether the requested connection would in any way impair the usefulness of the existing sewer system, including the treatment plant of the mentioned authority. In the case of Darby Township v. Collingdale Borough, 74 D. & C. 238 (1950), it was stated:

"There are few inter-municipal relationships in which greater cooperation is usually exhibited than in agreements to carry sewage of adjoining municipalities, and this court cannot be affected by opposition to progress or sensible relationship between municipalities without substantial and compelling reasons, which do not here appear. It is the history of the growth of communities, that cities, townships, towns and boroughs must cooperate in sewage problems common to all. It is difficult to comprehend that the law will tolerate one municipality prohibiting another from using its sewer system. Municipal comity does not function that way. We emphasize, however, that when a municipality desires to connect with another one, the one desiring the connection must accomplish it on fair and equitable terms, and bear its proportionate part of the original cost and maintenance".

Although it is conceded by petitioner township that they are required and will pay for the cost of the connecting into the authority system, there is no indication of a willingness on the township's part to pay for a proportionate share of the original cost or maintenance of the system as a whole. Irrespective of this consideration, there is an overlying reason which prevents the court from granting the prayer of petitioner. The testimony reveals that the sewer plant and system of the authority was built to accommodate a population of 10,000 users. The plant is now functioning at near capacity, and over 9,600 people utilize the facilities of the system. Although the plant was constructed to accommodate more users than the then existing population, it is understandable that the authority anticipated both an increase in population and an increase in the number of users connecting into this system.

There was sufficient evidence that within the borough's jurisdiction, there exists vacant land usable as

residential development and property available for the attraction of industrial and commercial facilities.

Defendant's objections can be easily expressed by its desire to accommodate those people who are potential residents within the borough who may wish to connect into the system, and it is holding out this facility as an attraction for possible enterprises in the community. As previously stated, the Borough of Scottdale, and it is to be noted the Borough of Everson also, has vacant land which in all probability will be developed in the near future. For this reason, we believe that the present landowners in the Boroughs of Scottdale and Everson, and any others involved in the authority, are entitled to preference insofar as sewer accommodations are concerned, in view of the fact that each and every one of the lot owners and property owners in the boroughs making up the authority have assumed, via taxation and assessment, the original cost of the sewerage plant constructed. To permit outsiders who had the opportunity in the first instance to join in this enterprise to use up the available capacity of the treatment plant would not be equitable under any circumstances.

If we permit 45 who now wish to connect, we would be opening the door to additional potential users in the adjacent areas. In little or no time, the entire capacity would be utilized by many who refused to get in on the ground floor of the construction of this plant.

Another important reason to be considered is the fact that the sewer line along this particular street, as presently constructed, is not adequate to handle additional sewerage, and permitting additional tap-ins would result in another charge to the residents of the initiating boroughs for installation of new lines sufficient to take care of additional sewerage. In fact, the testimony reveals that with those presently tapping in along this particular street, the lines are inade-

quate. To impose on the very limited reserve capacity of the sewer system the additional burden of non-resident use is, in this court's opinion, an impairment of the usefulness of the existing system.

For these reasons, it is felt that East Huntingdon Township has not sustained its burden of showing to the satisfaction of this court that a connection into the sewer system within the Borough of Scottdale would not impair the usefulness of the existing sewers and treatment plant and, therefore, must deny the relief requested.

### ORDER

And now, to wit, April 7, 1967, petition for appointment of viewers is hereby denied and the petition dismissed.